```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

TERRY S. FOGAN,

                      Plaintiff,                       **Hon. Hugh B. Scott**

                                          **18CV1404**

                        v.

                                          **CONSENT**

ANDREW SAUL, COMMISSIONER,             **Order**

                      Defendant.

      Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 7 (plaintiff), 9 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 11, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

      The plaintiff ("Terry Foran" or "plaintiff") filed an application for disability insurance benefits on July 6, 2015 [R. 15]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded,

in a written decision dated December 12, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on October 24, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on December 4, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 7, 9), and plaintiff duly replied (Docket No. 10). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 49-year-old with a high school education, last worked as an asbestos remover and warehouse worker [R. 32]. Plaintiff contends that he/she was disabled as of the onset date of September 15, 2014 [R. 15]. Plaintiff claims the following impairments deemed severe by the ALJ: degenerative disc disease of the lumbar spine and cervical spine; anxiety disorder; and substance use disorder [R. 17].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims post-traumatic stress disorder ("PTSD") from childhood abuse, military sexual trauma, and incarceration (Docket No. 7, Pl. Memo. at 7, 16-17). He claimed that he was intimidated into sexual activity with a commanding officer while serving in the United States Navy [R. 367] (id. at 7). Plaintiff began vocational rehabilitation at the Buffalo Veterans Affairs Medical Center in February 2015, but he reported missing two days due to not sleeping and complaining that too many people were around [R. 387] (id. at 5-6). Dr. William Reynolds examined plaintiff for the Department of Veterans Affairs (or "VA") on July 3, 2015, and found

that plaintiff met the DSM-5's criteria for PTSD, with symptoms of suspiciousness, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances [R. 363, 368-70] (Docket No. 7, Pl. Memo. at 6, 7, 16); see generally American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 271-72 (5th ed. 2013) ("DSM-5").

On April 15, 2016, Dr. Sandra Jensen examined plaintiff for his eligibility to receive VA benefits and opined that plaintiff's PTSD, from stressors of childhood abuse, sexual assault while in the military, caused "moderate to severe social impairment and moderate occupational impairment" [R. 577], although the service-related stress did not create a higher level of impairment (for VA benefit purposes) [R. 577]. Dr. Jensen found that plaintiff had occupational and social impairments in reduced reliability and productivity [R. 570] (id. at 8), noting that plaintiff did not like to be around people and was easily defensive and irritable [R. 572] (id. at 8, 6). Dr. Jensen diagnosed plaintiff with PTSD and opined that plaintiff's PTSD may cause occupational limitations [R. 574-76, 577, 573] (id. at 9, 8).

The ALJ, however, distinguished the VA medical opinions concluding that the progress notes "show little to suggest that claimant was disabled and incapable of working" regarding plaintiff's neck and low back pain [R. 23-24]. As for his mental impairments, the ALJ said that the VA continued to provide ongoing care for these severe impairments "but that their effects were not significantly limiting" [R. 25, citing generally R. 450-601], pointing to a December 5, 2016, examination of plaintiff that found that his mental health symptoms "caused no restrictions" [R. 26, 501]. This evaluation was by social worker, Thomas Szczygiel [R. 500].

3

Plaintiff also complains of low back, elbow and hand pain [R. 333-35, 352-53, 543-45]. Plaintiff was in an auto accident on September 1, 2016, complaining of neck pain, and left sided rib and chest wall pain [R. 530] (Docket No. 7, Pl. Memo. at 9, 19). He contends that left knee, low back, and neck pain were exacerbated by this accident [R. 422, 530, 624].

Dr. Rodrigo Castro, on November 18, 2016, through June 9, 2017, examined plaintiff and found that he was 100% disabled due to neck and back pain [R. 425, 430-31, 435-36, 445]. The ALJ later gave limited weight to this opinion because it reached the ultimate issue of determining disability (reserved by regulations to the Commissioner, 20 C.F.R. § 416.927(d)), the vagueness of the declaration, and that the conclusions had little support from the doctor's records [R. 29].

Dr. Graham Huckell[1] examined plaintiff and found that he was temporarily disabled for his left knee [R. 626, 631, 638]. The ALJ gave Dr. Huckell's opinion limited weight because the doctor's own findings showed no signs of weakness in plaintiff's knees [R. 30]. The ALJ cited to MRI scans showing only subtle degenerative changes with no discrete tears identified [R. 30, 637]. Even though plaintiff continued to complain of leg pain, the ALJ noted that plaintiff declined using assistive devices [R. 30, 642], with the doctor reporting that plaintiff left a straight cane in his car "because he does not like to use it" [R. 642]. The ALJ then concluded that "I find that enough evidence exists to suggest that [plaintiff's] knee pain had an effect on his abilities; however, I am unable to find that Dr. [Huckell's, sic] opinion is consistent with that evidence" [R. 30].

---

[1] The ALJ consistently and defendant occasionally spell the doctor's name as "Hucknell," e.g., [R. 30], Docket No. 9, Def. Memo. at 10; cf. id. at 9, while the doctor's medical records have his name spelled Huckell, e.g., [R. 638].

On October 12, 2015, Dr. Hongbiao Liu examined plaintiff for a consultative evaluation, diagnosed plaintiff with chronic neck and low back pain and history of anxiety, and found that plaintiff had "mild to moderate limitation for prolonged walking, bending, kneeling, and overhead reaching" [R. 279-81, 23, 31]. The ALJ gave this "common sense opinion" great weight as being consistent with the residual functional capacity [R. 31].

The ALJ found that plaintiff had a residual functional capacity for light work, provided that plaintiff can occasionally climb, balance, stoop (but only to an angle of approximately 45°, per plaintiff's hearing testimony [R. 43-44, 22]), kneel, crouch, or crawl; occasionally reach overhead [R. 22]. The ALJ also found that plaintiff had a mental residual functional capacity to perform unskilled work which would allow regular breaks every two hours, which does not involve interaction with the public as part of job duties, and where interactions with coworkers and supervisors are limited to occasional only [R. 22].

The ALJ found that plaintiff was unable to perform past relevant work as an asbestos remover and warehouse worker, deemed to be medium to very heavy work [R. 32]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as a sorter and a packer (both light exertion work) [R. 33]. As a result, the ALJ held that plaintiff was not disabled [R. 33, 34].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined

as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I. General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

6

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to

return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the mental residual functional capacity assessment was not supported by substantial evidence because the ALJ failed to discuss the findings of two VA doctors, Drs. Reynolds and Jensen (Docket No. 7, Pl. Memo. at 1, 15-18). As for the physical residual functional capacity, plaintiff argues that it also lacked substantial evidence for three reasons (id. at 1, 18-24). First, that assessment is based on a stale consultative opinion of Dr. Liu from October 2015, that did not include plaintiff's condition after a subsequent accident (id. at 18-20). Second, the ALJ erred in not recontacting plaintiff's orthopedists Drs. Castro and Huckell (id. at 18, 20-21). Third, plaintiff contends that the resulting assessment was nothing more than the ALJ's lay interpretation of the bare medical findings (id. at 18, 21-24).

I.  Mental Residual Functional Capacity and VA Medical Opinions

Plaintiff first contends that the ALJ failed to discuss the medical findings of plaintiff's Veterans Affairs doctors, Drs. Reynolds and Jensen (Docket No. 7, Pl. Memo. at 15, 17).

The ALJ stated that these VA doctors reached the ultimate decision whether plaintiff was disabled or not, a decision reserved to the Commissioner [R. 31]. The ALJ also found that the VA doctors were applying different standards than acceptable by the Social Security Administration and, under SSA regulations, the Commissioner need not apply non-Social Security standards [R. 31]. The ALJ did evaluate Drs. Reynolds and Jensen's evidence, giving

8

great weight to that evidence showing that plaintiff had some functional impairment nevertheless concluding that plaintiff was not disabled under Social Security rules [R. 31].

Defendant now argues that these doctors' generalized conclusions and examination findings do not necessarily equate with work-related mental imitations (Docket No. 9, Def. Memo. at 5). Dr. Reynolds did not state areas of functioning plaintiff experienced distress of difficulty in and what degree of distress plaintiff experienced (id. at 6). Defendant also asserts that plaintiff disregards Dr. Jensen's full opinion in which she said plaintiff's PTSD "may" cause plaintiff's occupational impairments, but plaintiff was looking for work as an over-the-road trucker as work that he could perform by himself [R. 573] (id.). Defendant highlights Dr. Jensen's doubts as to plaintiff's motivation to find such work and the excuse of plaintiff's felony record as precluding it [R. 573] (id.). Defendant states that the ALJ considered plaintiff's mental impairments, ultimately factoring them into the residual functional capacity assessment that limited plaintiff to unskilled work, thus plaintiff was not harmed by exclusion of more detailed account of the doctors' opinions (id. at 7).

As for Dr. Jensen's opinion, plaintiff argues defendant ignores the actual opinion and plaintiff cites to her discussion of plaintiff's relevant occupational and educational history [R. 572-73] in which she concluded that the "Veteran's PTSD may cause occupational impairment in that he does not like to be around people," and then discussing is interest in over-the-road truck driving [R. 573]. Plaintiff goes a few pages later in that report in her remarks where Dr. Jensen found that plaintiff's symptoms "continue to be consistent with a diagnosis of PTSD" [R. 577]. (See Docket No. 10, Pl. Reply Memo. at 1-2.)

9

At issue is whether plaintiff's PTSD affects his ability to work. Dr. Janice Ippolito, consultative examiner, found that plaintiff's PTSD did not significantly interfere with his ability to function on a daily basis [R. 31, 276]. Dr. Ippolito provided her evaluation consistent with Social Security standards, whereas Drs. Reynolds and Jensen evaluated based upon Veterans Affairs standards. Plaintiff faults the ALJ for not evaluating the VA doctors' opinions but the ALJ did evaluate, concluding that the evidence showed some limitations but not enough to constitute disability [R. 31]. The ALJ evaluated the degree of plaintiff's debilitation [R. 31]; this Court must defer to that finding because the ALJ heard the testimony and evidence in the first instance, see Biestek v. Berryhill, 587 U.S. ___, 139 S.Ct. 1148, 1157 (2019).

Therefore, plaintiff's motion (Docket No. 7) as to his mental residual functional capacity is **denied**.

II.   Physical Residual Functional Capacity

   A.   Stale Opinion

Next, plaintiff contends that the ALJ relied upon the stale consultative opinion of Dr. Liu of October 2015 (Docket No. 7, Pl. Memo. at 18; see Docket No. 10, Pl. Reply Memo. at 3); the ALJ gave great weight to Dr. Liu's opinion [R. 31]. After that evaluation, plaintiff suffered an automobile accident which worsened his low back pain, left knee pain, and neck pain (Docket No. 7, Pl. Memo. at 19, 20; Docket No. 10, Pl. Reply Memo. at 3) [R. 422, 530, 624].

Defendant responds that the ALJ considered plaintiff's medical evidence in chronological order (including evidence after Dr. Liu's evaluation) and explained how the evidence informed his residual functional capacity finding along the way [R. 22-32] (Docket No. 9, Def. Memo. at 8). Defendant argues that Dr. Liu's opinion was well supported by objective medical evidence

and consistent with the entire record (id.), specifically plaintiff's subsequent recovery from that automobile accident [R. 24-26] (id.). Defendant also points to plaintiff's daily activities, such as operating a push lawnmower, collecting scrap metal, lifting weights, and looking for employment [R. 28-29] support the ALJ's findings regarding Dr. Liu's opinion (id.).

Stale opinions cannot constitute substantial evidence, Majdandzic v. Comm'r of Soc. Sec., No. 17CV1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (Geraci, Ch.J.) (quotation omitted) (id.). As further noted by Chief Judge Geraci in Majdandzic, supra, at *3, "a gap in time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." But such an opinion may be found to be stale "if the claimant's condition deteriorates during that time," id. (citations omitted).

Dr. Liu rendered the opinion in October 2015 and plaintiff had his administrative hearing on November 2017, with an automobile accident intervening. Plaintiff was treated for that accident and reported in his functional assessment report that he walked around, did not complain about climbing stairs, kneeling, or squatting [R. 219, 221], and later reported not having difficulty operating a push mower [R. 512], although reporting not lifting due to pain [R. 221]. Plaintiff later testified that he could lift 15 pounds [R. 42].

Although Dr. Liu's opinion is months prior to plaintiff's hearing, plaintiff's automobile accident injuries did not render Dr. Liu's opinion stale. Plaintiff's condition has not deteriorated since October 2015 despite the accident. Thus, plaintiff's motion for judgment (Docket No. 7) on this ground is **denied**.

B.   Re-contacting Treating Orthopedists

Next, plaintiff argues that the ALJ should have contacted Drs. Castro and Huckell again for detailed functional assessments rather than rejecting their opinions merely because they reached the ultimate issue of disability (Docket No. 7, Pl. Memo. at 18, 20-21; cf. [R. 29, 30]). These doctors found that plaintiff was disabled (either temporarily [R. 626, 631, 638] (Dr. Huckell) or 100% totally disabled [R. 425, 431, 436, 445] (Dr. Castro)) following plaintiff's automobile accident.   Plaintiff contends that the ALJ needed to explain why he rejected these opinions beyond his conclusion that those doctors reached the ultimate determination of disability (id. at 20).   Plaintiff connects this objection with the ALJ's reliance upon his own lay opinion in assessing the raw medical data rather than expert medical opinion (id. at 21).

Defendant counters that plaintiff concedes (but cf. id. at 20-21) that the ALJ in fact did evaluate all evidence in the record, see Shamburger v. Colvin, No. 15CV107, 2017 WL 4003032, at *4 (W.D.N.Y. Sept. 12, 2017) (Telesca, J.) (Docket No. 9, Def. Memo. at 9).   Emphasizing the conclusory nature of these doctors' opinions and their reaching the ultimate issue of disability, defendant denies that the ALJ was obligated under the regulations to contact Drs. Castro and Huckell; if their opinions differ from other parts of the medical evidence then the ALJ as finder of fact was to determine which facts to accept (id. at 10), 20 C.F.R. § 416.920b(b)(1) (if there are inconsistencies in the medical record, the Commissioner will determine disability based upon the material on hand).   Defendant argues that the ALJ needs to recontact sources only if the inconsistencies cannot be resolved or if the evidence is insufficient to determine disability (id. at 10-11), 20 C.F.R. § 416.920b(b)(2)-(3); Jasen v. Comm'r of Soc. Sec., No. 16CV6153, 2017 WL 3722454, at *12 (W.D.N.Y. Aug. 29, 2017) (Payson, Mag. J.).

Defendant also argues that plaintiff is merely inviting this Court to reweigh the evidence in a light more favorable to plaintiff (id. at 11).

The ALJ gave orthopedist Dr. Castro's opinions limited weight because it reached the ultimate determination of disability and the ALJ deemed to be vague declaration and was little supported by the doctor's own records [R. 29]. The ALJ also noted that Dr. Castro saw plaintiff five times [R. 29]; one factor in evaluating medical opinions is the length of treatment relationship and the frequency of examination, 20 C.F.R. § 416.927(c)(2)(ii). Reviewing Dr. Castro's evaluations shows vagueness upon which the ALJ based his conclusion; Dr. Castro diagnosed plaintiff had cervical and lumbar spine pain, but the doctor did not state the functional limitations plaintiff had with that pain.

In order to warrant contacting again medical sources, the record must be insufficient for the ALJ to determine disability, see Jasen, supra, 2017 WL 3722454, at *12, or inconsistencies within the record (Docket No. 9, Def. Memo. at 10). Where the medical record is otherwise complete, there is no duty for the ALJ to recontact treating physicians for clarification, Ayers v. Astrue, No. 08CV69, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) (Arcara, Ch.J.); Jasen, supra, 2017 WL 3722454, at *12. As then-Chief Judge Arcara noted, "only if the ALJ cannot determine whether a claimant is disabled based upon existing evidence does the duty to recontact arise," Ayers, supra, 2009 WL 4571840, at *2; see Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996). Plaintiff here argues that the ALJ should have re-contacted these doctors rather than reject their opinions (Docket No. 7, Pl. Memo. at 21). He does not argue any gaps in the record but the omission in the ALJ's evaluation of the medical

record. This does not require re-contacting Drs. Castro and Huckell. Thus, plaintiff's motion on this ground is **denied**.

        C.      Reliance upon ALJ's Lay Opinion

Plaintiff argues that the ALJ avoided examining Drs. Castro and Huckell's opinions by rendered his lay interpretation of raw medical evidence (Docket No. 7, Pl. Memo. at 21). Defendant denies that the ALJ relied upon his lay interpretation; instead the ALJ compared the opinion evidence to the record and drew meaningful inferences from that evidence (Docket No. 9, Def. Memo. at 10). Defendant concludes that the ALJ did not substitute a lay opinion about this evidence (id.).

As for Dr. Huckell, the ALJ gave his opinion limited weight, noting that plaintiff had "relatively stable findings" and no signs of weakness in his lower extremities and avoided using a cane despite Dr. Huckell's conclusion of temporary disability [R. 30]. Dr. Huckell, however, noted disc herniation at C4-C5 to C6-C7 discs and at L3-L4 to L4-L5 discs [R. 645 (Sept. 21, 2017)] that the ALJ termed as being only "subtle" [R. 30]. This is an example of the ALJ applying his lay interpretation on the medical record in making findings beyond his expertise. Another example of the ALJ applying his lay opinion is his consideration of VA medical sources. The ALJ selectively adopts the findings of VA sources that found plaintiff lacked restrictions [R. 26, 501] which relied upon VA disability standards in rating restrictions [R. 501] while rejecting other VA sources' opinions that found limitations on the grounds that the VA did not apply Social Security standards (cf. [R. 31]). The ALJ cannot substitute his lay opinion for acceptable medical authorities, Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); Morseman v.

Astrue, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (Telesca, J.). Thus, plaintiff's motion, on the ground of applying lay opinion rather than medical opinion, is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 7) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 9) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 18, 2020